UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re

                              Case No. 02-23134-CEC

Monahan Ford Corp. of Flushing,

                              Chapter 7

                Debtor.
---------------------------------------------------------x
Richard J. McCord, as Chapter 7 Trustee of
the Estate of Monahan Ford Corp. of Flushing,        Adv. Pro. No. 04-1496-CEC

                Plaintiff,

        -against-

Jaspan Schlesinger Hoffman, LLP,

                Defendant.
---------------------------------------------------------x

<u>DECISION</u>

APPEARANCES:

| | |
|---|---|
| Allan Hyman | Vincent D. McNamara |
| Certilman Balin Adler & Hyman LLP | Law Office of Vincent D. McNamara |
| 40 Merrick Avenue | Tower Square |
| East Meadow, New York 11554 | 1045 Oyster Bay Road |
| Attorneys for Plaintiff | East Norwich, New York 11732 |
| | Attorneys for Defendant |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

In this adversary proceeding, Richard J. McCord, chapter 7 trustee of the estate of Monahan Ford Corporation of Flushing (the "trustee"), asserts claims against Jaspan Schlesinger Hoffman, LLP (the "Jaspan Firm") for legal malpractice in their representation of the debtor-in-possession in this bankruptcy case.  This matter comes before the Court on the trustee's motion for partial summary judgment, and on the Jaspan Firm's cross motion for summary judgment.  The trustee's motion is granted in part and denied in part, and the Jaspan Firm's motion is denied.

<u>Jurisdiction</u>

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b) and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

<u>Facts</u>

The following facts are undisputed.

In 2002, Monahan Ford Corporation of Flushing (the "debtor" or "Monahan Ford") was a franchised automobile dealer of Ford vehicles located in Flushing, Queens.  Monahan Ford operated at premises leased from 150-05 Northern LLC, 37-20 Prince Street LLC, and 133-48 Prince Street LLC (collectively, the "Landlords").  The Landlords were owned equally by Micaela Monaghan and her brother, John Monaghan.  Each lease was for a period of ten years, commencing June 1, 2001, and offered Monahan Ford the right of first refusal in the event the Landlords decided to sell the premises.  One of the leases had two renewal options of five years each, and the other lease had a single ten year renewal option.

On October 17, 2002, Monahan Ford, then represented by Pryor & Mandelup LLP, filed a voluntary petition under chapter 11 of the Bankruptcy Code. As of that date, Micaela Monaghan, one of the 50% owners of the Landlords, owned 49% of Monahan Ford's shares, and George Papantoniou owned 51%.[1]

On October 18, 2002, Pryor & Mandelup filed a motion on behalf of the debtor seeking authorization to use cash collateral of Ford Motor Credit Company ("Ford Credit"). Ford Credit asserted a security interest in almost all of the debtor's assets. Shortly thereafter, the Jaspan Firm replaced Pryor & Mandelup, and on November 30, 2002, the Court approved the debtor's retention of the Jaspan Firm, nunc pro tunc to October 22, 2002.

On November 14, 2002, the Court so-ordered a stipulation between the debtor and Ford Credit, which was also signed by the Jaspan Firm, permitting the use of cash collateral in compliance with a budget. Pursuant to the stipulation, all proceeds received from selling vehicles or vehicle parts were to be deposited into a bank account, and, subject to certain exceptions, the debtor was not permitted to withdraw funds from the account without Ford Credit's consent. As soon as the debtor completed a vehicle sale, Ford Credit obtained the proceeds, without deduction of any sales taxes. As a result, the debtor did not pay any post-petition sales taxes, causing the assessment of penalties and interest.

The cash collateral stipulation also provided that George Papantoniou would not have any managerial power, and required the debtor to hire an independent manager. Steve Leon was

---

[1] Because this bankruptcy case was commenced before October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), subject to certain exceptions, the Bankruptcy Code in effect prior to BAPCPA applies.

hired to manage the debtor pursuant to a management agreement, in compliance with the cash collateral stipulation.

Given that the debtor filed its petition on October 17, 2002, the sixty day period provided in § 365(d)(4) of the Bankruptcy Code for the debtor to assume leases of non-residential real property, or seek an extension of time to do so, expired on December 16, 2002. Although the Jaspan Firm was involved in discussions with entities interested in purchasing the debtor's dealership, and although the leases for the premises on which the dealership operated were unquestionably material to any potential sale, the Jaspan Firm did not move to assume the leases by that date, or seek an extension of time to do so. Section 365(d)(4) of the Bankruptcy Code provides that if a lease is not assumed, or the time extended, within the statutory sixty day period, the lease "is deemed rejected." 11 U.S.C. § 365(d)(4).

On January 17, 2003, the Landlords filed a motion seeking the debtor's surrender of the premises, or relief from the automatic stay in order to evict the debtor. The Landlords argued that the leases were rejected by operation of law. The Jaspan Firm, on behalf of the debtor, opposed the Landlords' motion, arguing that Ms. Monaghan knew that the debtor needed to sell the dealership or obtain an investor to pay Ford Credit's claims, and that the debtor therefore needed to assume and assign the leases. Objection of Debtor to Motion of the Landlord [Case No. 02-23134, Docket # 32] at ¶ 13. The Jaspan Firm also asserted that John Monaghan had "expressed a willingness to work with the [d]ebtor and an awareness of the importance of the leases." Id. at ¶ 14. The Jaspan Firm noted that a stipulation extending the time to assume or reject the unexpired leases was sent to Ms. Monaghan's counsel, who did not return phone calls relating to the stipulation until after the 60 day assumption period had expired. Id. at ¶ 13

On February 3, 2003, the debtor commenced an adversary proceeding against the Landlords, John Monaghan, and Micaela Monaghan seeking to recover fraudulent and preferential transfers, and asserting claims for breach of fiduciary duty and conversion. The total judgment sought in that adversary proceeding was approximately $2.3 million.

On February 13, 2003, Mark Tulis was appointed as chapter 11 trustee. On February 14, 2003, the case was converted to one under chapter 7 of the Bankruptcy Code, and Richard J. McCord was appointed as chapter 7 trustee.

On March 5, 2003, in response to the Landlord's motion for relief from the stay, the trustee filed a cross-motion to extend the time to assume or reject the leases to April 8, 2003. The trustee argued that, pursuant to § 365(d), he was entitled to an additional 60 days from the date of conversion to assume the leases. The trustee also argued that the Landlords waived their right to argue that the leases were rejected because the Landlords and the debtor had common insiders, and therefore, the Landlords knew of the bankruptcy filing and the debtor's intention to assume and assign the leases. The Landlords objected to the trustee's motion, arguing that the conversion of the case on February 14, 2003 did not create a new period to assume the leases after they were rejected by operation of law on December 16, 2002.

On May 14, 2003, the Court approved a stipulation between the trustee, the Landlords, Mr. Monaghan, and Ms. Monaghan settling the adversary proceeding and the pending motions. Pursuant to the stipulation, the trustee received $1 million from Ms. Monaghan's estate[2], the trustee agreed to surrender the premises, and Ms. Monaghan's estate agreed to indemnify the

---

[2] Ms. Monaghan passed away in March, 2003.

debtor's estate for any taxes it owed New York State to the extent Ms. Monaghan was personally liable therefor.

On October 15, 2004, the trustee commenced this adversary proceeding against the Jaspan Firm alleging that its failure to move in a timely fashion to assume the leases, or for an extension of time to do so, or to advise the debtor of the consequences of the failure to do either, constituted legal malpractice. The trustee also alleged that the Jaspan Firm committed legal malpractice by advising the debtor not to pay sales taxes and drafting the management agreement and cash collateral stipulation in a way that did not permit the debtor to do so without Ford Credit's consent.

<u>Applicable Law</u>

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "When cross-motions for summary judgment are pending, '[e]ach individual summary judgment motion must be evaluated independently.'" <u>Healey v. Thompson</u>, 186 F. Supp. 2d 105, 113 (D. Conn. 2001), *aff'd in part, vacated in part on other grounds*, <u>Lutwin v. Thompson</u>, 361 F.3d 146 (2d Cir. 2004). A court is not required to grant one party's motion because the other party's motion was denied. <u>Otis Elevator Co. v. Factory Mut. Ins. Co.</u>, 353 F. Supp. 2d 274, 279 (D. Conn. 2005).

When deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to

be tried.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A fact is considered

material if it "might affect the outcome of the suit under the governing law."  Id. at 248.  No

genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury

to return a verdict for that party.  If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).  On the other

hand, if "there is any evidence in the record from any source from which a reasonable inference

could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v.

TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  "The non-moving party must show that

there is more than a metaphysical doubt regarding the material fact and may not rely solely on

self-serving conclusory statements."  Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R.

448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted).  When deciding cross-motions for

summary judgment, the court must "tak[e] care in each instance to draw all reasonable inferences

against the party whose motion is under consideration."  Otis Elevator, 353 F. Supp. 2d at 279.

Assumption and Rejection of Unexpired Leases

Section 365(a) of the Bankruptcy Code permits a debtor in possession to assume or reject

unexpired leases.  11 U.S.C. § 365(a).  Section 365(b) of the Bankruptcy Code provides that if

there was a default under the unexpired lease, a debtor in possession may not assume the lease

unless it:

>    (A)    cures, or provides adequate assurance that the
>           [debtor in possession] will promptly cure, such
>           default . . . ;
>
>    (B)    compensates, or provides adequate assurance that the
>           [debtor in possession] will promptly compensate, a party
>           other than the debtor to such contract or lease, for any

> actual pecuniary loss to such party resulting from such
> default; and
>
> (C)     provides adequate assurance of future performance under
> such contract or lease.

11 U.S.C. § 365(b)(1).  Subject to exceptions not relevant to this case, a debtor in possession may

also assign an unexpired lease, provided that the requirements for assumption are met.  11 U.S.C.

§ 365(f)(2)(A).  Where the assignment of a lease is contemplated, the parties look to the

proposed assignee to provide the requisite adequate assurance of future performance. 11 U.S.C. §

365 (b)(1)(C), (f)(2)(B); In re Evelyn Byrnes, Inc., 32 B.R. 825, 828 (Bankr. S.D.N.Y. 1983) (the

assurance tendered by the debtor upon the assumption of the lease is the prospective performance

of the assignee under § 365(f)).

Unless an unexpired lease of nonresidential real property is assumed within 60 days after

the order for relief, the lease is deemed rejected.  11 U.S.C. § 365(d)(4).  Pursuant to § 365(d)(4),

a debtor in possession can move, within the 60 day period, for an extension of time to assume a

lease.  Id.

When deciding whether to grant an extension of time to assume or reject an unexpired

lease, a court should consider, among other things, the following factors:

> (1)     whether the debtor was paying for the use of the property;
>
> (2)     whether the debtor's continued occupation could damage
> the lessor beyond the compensation available under the
> Bankruptcy Code;
>
> (3)     whether the lease is the debtor's primary asset; and
>
> (4)     whether the debtor has had sufficient time to formulate a
> plan of reorganization.

South St. Seaport LP v.Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 761 (2d Cir. 1996) (quoting, in part, Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105-106 (2d Cir. 1982)). As the Burger Boys court pointed out, the status of the debtor's post-petition payments to the landlord is a relevant consideration for the bankruptcy court in determining whether to grant an extension of time to assume or reject, but "[i]t is not, however, the only consideration." Id.

Legal Malpractice

Under New York law, to prevail in a legal malpractice action, the plaintiff must establish "the existence of an attorney-client relationship, negligence on the part of the attorney or some other conduct in breach of that relationship, proof that the attorney's conduct was the proximate cause of injury to the plaintiff, and proof that but for the alleged malpractice the plaintiff would have been successful in the underlying action." Hanlin v. Mitchelson, 794 F.2d 834, 838 (2d Cir. 1986). An attorney is negligent if he "failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by an ordinary member of the legal community." Cohen v. Wallace & Minchenberg, 835 N.Y.S.2d 285, 287 (N.Y. App. Div. 2007); Edelweiss (USA) Inc. v. Vengroff Williams & Assocs., 815 N.Y.S.2d 589, 592 (N.Y. App. Div. 2006); McNamara v. Tendy & Cantor, P.C., 699 N.Y.S.2d 923, 923 (N.Y. App. Div. 1999). Although "an attorney is not held to the rule of infallibility and is not liable for an honest mistake in judgment where the proper course is open to reasonable doubt," the attorney may be liable for legal malpractice for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Bernstein v. Oppenheim & Co., 160 A.D.2d 428, 430 (N.Y. App. Div. 1990).

However, even if an attorney's conduct was negligent, the requirement that a plaintiff show that but for the negligence it would have not been injured, sets a "high bar" to proving that the attorney committed legal malpractice.  <u>Littman Krooks Roth & Ball v. N.J. Sports Prods. Inc.</u>, Case No. 00 CIV. 9419 (NRB), 2001 WL 963949, at *3 (S.D.N.Y. Aug. 22, 2001).  This last element "seeks to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice, and demands a nexus between loss and injury even closer than that required by the proximate cause prong."  <u>Sloane v. Reich</u>, Case No. 90 Civ. 8187 (SS), 1994 WL 88008, at *3 (S.D.N.Y. Mar. 11, 1994).

<u>Discussion</u>

This Court Has Authority to Entertain a Motion for Partial
<u>Summary Judgment on the Trustee's Malpractice Claims.</u>

The Jaspan Firm argues that, because a showing of damages caused by the defendant's negligence is a prerequisite to liability on a malpractice claim, partial summary judgment cannot be granted to the trustee.  This argument reflects a misunderstanding of the nature of summary judgment.  Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, permits a party claiming relief to move "for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(a).  In order to prevail in a malpractice action, the plaintiff must show (1) the existence of an attorney-client relationship (<u>i.e.</u>, duty); (2) negligence on the part of the attorney or some other conduct in breach of the relationship (<u>i.e.</u>, breach of duty); and (3) damages connected by the requisite causal link to the attorney's negligence.  Although ultimate judgment cannot be awarded unless all elements are established, nothing prevents the court, under Rule 56(a), from awarding summary judgment on the first two elements

of the claim, where, as here, none of the material facts necessary to establish those elements are in dispute.

<u>Attorney Affirmations</u>

The trustee argues that the Jaspan Firm's opposition to the trustee's motion and the Jaspan Firm's cross motion are defective because they are based, in substantial part, on affirmations by Helen M. Benzie, the Jaspan Firm's attorney.

Federal Rule of Civil Procedure 56(e)(1), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Ms. Benzie, an attorney retained after the commencement of this adversary proceeding, has no personal knowledge of the underlying facts. Therefore, Ms. Benzie's affirmations may not be received as evidence of the underlying facts, and will be considered as affirmations introducing the exhibits annexed thereto, or as memoranda of law, to the extent legal arguments are asserted.

<u>Estoppel and Waiver</u>

The Jaspan Firm argues that the trustee is estopped from asserting a claim for legal malpractice because the co-trustee is prosecuting an adversary proceeding against Ford Credit and other defendants (the "Ford Credit Adversary Proceeding"), alleging claims that "directly controvert and constitute judicial admissions against interest." Jaspan Firm's Reply Mem. of Law at 5-13.

The doctrine of judicial estoppel prevents a party from asserting a factual position in one case that is contrary to a position that party successfully asserted in a prior case. <u>Rodal v.</u>

Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004) (citing Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)).  The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  New Hampshire v. Maine, 532 U.S. 742, 749-750 (2001) (citations and quotation marks omitted).  A party arguing that his opponent is barred by judicial estoppel "must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment."  Mitchell, 190 F.3d at 6 (citations omitted).

The trustee is not judicially estopped from asserting the malpractice claim against the Jaspan Firm based upon the allegations made in the Ford Credit Adversary Proceeding.  That litigation is currently pending, no judgment has been rendered, and no court has adopted any of the co-trustee's positions.

A judicial admission is a formal concession by a party, or its counsel, in a pleading, brief, or stipulation and is binding on the party and the Court.  See Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994); Rosen v. Brookhaven Capital Mgmt., 194 F. Supp. 2d 224, 229 (S.D.N.Y. 2002); Lambert v. Credit Lyonnais (Suisse) S.A., 2001 WL 357316, at *1 (S.D.N.Y. Apr. 10, 2001).  Legal arguments made to a court are not judicial admissions.  N.Y. State Nat. Org. for Women v. Terry, 159 F.3d 86, 97 n.7 (2d Cir.1998); Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 464 (S.D.N.Y. 2000), aff'd, 230 F.3d 518 (2d Cir. 2000).

No estoppel in this adversary proceeding arises by virtue of any allegations made in the Ford Credit Adversary Proceeding because the allegations in that proceeding do not contradict

the allegations of the complaint in this proceeding.  There is no contradiction in alleging, as the

trustee has, that defendants in the Ford Motor Credit Adversary Proceeding conspired pre-

petition to exploit Monahan Ford for their own purposes, and that their actions, and

mismanagement, resulted in pre-petition and post-petition financial losses; and, at the same time,

alleging that the Jaspan Firm's negligent failure to seek an extension of time to assume or reject

the leases made it impossible for the trustee to mitigate these losses by selling the dealership with

the leases as a going concern.  Nor is it contradictory to allege that Ford Credit wrongfully

directed Mr. Leon to remit all proceeds of sales to Ford Credit without payment of sales tax, and

at the same time to allege that the Jaspan Firm's negotiation and drafting of the cash collateral

and management agreements that allowed this to occur was negligent.  See Simon v. Safelite

Glass Corp., 128 F.3d 68, 72-73 (2d Cir. 1997) ("[T]here must be a true inconsistency between

the statements in the two proceedings.  If the statements can be reconciled there is no occasion to

apply an estoppel.").

The Jaspan Firm further argues that the trustee is estopped from bringing this suit because

he and the Landlords settled the Landlords' motions for relief from the automatic stay and the

trustee's adversary proceeding against the Landlords and John and Micaela Monaghan.  Under

New York law, the settlement of an underlying claim does not preclude a legal malpractice

action.  Barry v. Liddle, O'Connor, Finkelstein & Robinson, 98 F.3d 36, 40 (2d Cir. 1996);

Mazzei v. Pokorny, Schrenzel & Pokorny, 509 N.Y.S.2d 100, 101 (N.Y. App. Div. 1986)

(general release executed upon the settlement of the underlying action does not preclude

subsequent attorney malpractice action); Rau v. Borenkoff, 691 N.Y.S.2d 140, 140 (N.Y. App.

Div. 1999) ("A settlement of the underlying claim does not preclude a subsequent action for legal

malpractice where the settlement was effectively compelled by the mistakes of counsel."); N.A.

Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy and Moe Levine, 397 N.Y.S.2d 142, 144

(N.Y. App. Div. 1977) (concurring opinion) (no waiver of legal malpractice after voluntary

settlement of underlying action), aff'd on concurring opinion, 408 N.Y.S.2d 475 (N.Y. 1978).

Furthermore, as the trustee points out, the settlement encompassed not only the issues relating to

the leases, but also the issues raised in the adversary proceeding brought by the trustee against the

Landlords and the Monaghans relating to fraudulent and preferential transfers, breach of

fiduciary duty, and conversion.  For all these reasons, the settlement with the Landlords does not

preclude this action.

Lastly, in response to the Jaspan Firm's argument that the trustee should be barred from

receiving double recovery, the trustee concedes that any damages awarded against the Jaspan

Firm in this adversary proceeding on the lease issue would be offset by the amount obtained as a

result of settlement relating to the leases.  (Tr.[3] at 39.)

Necessity of Expert Affidavits

The Jaspan Firm argues that the trustee's summary judgment motion must be denied

because the trustee did not submit an expert's affidavit in support of his motion.  The Jaspan Firm

submitted an affidavit by Edward J. Janger, a professor at Brooklyn Law School, in support of its

position that the firm did not deviate from the necessary standard of care.  The trustee argues that

an expert affidavit is not required for determination of this motion.

While expert testimony may be required to establish whether an attorney was negligent, it

is not required if the fact-finder's ordinary experience "'provides sufficient basis for judging the

---

[3] "Tr." refers to the transcript of the hearing held on January 29, 2008.

adequacy of the professional service.'" Northrop v. Thorsen, 46 A.D.3d 780, 782 (N.Y. App. Div. 2007) (quoting Greene v. Payne, Wood & Littlejohn, 197 A.D.2d 664, 666 (N.Y. App. Div. 1993)).  Here, the bankruptcy court is the finder of fact; no jury trial has been requested.  The bankruptcy court is charged by the Bankruptcy Code with the task of reviewing a debtor in possession's transactions with its attorneys, and determining the reasonable amount of compensation to which the attorney is entitled.  11 U.S.C. §§ 329, 330; Fed. R. Bank. P. 2017.

Section 330 of the Bankruptcy Code provides factors to consider in determining the compensation to which an attorney retained by the debtor in possession may be entitled.  11 U.S.C. § 330.  Two of those enumerated factors expressly require the bankruptcy court to evaluate the attorney's professional skills:  (1) whether the professional "has demonstrated skill and experience in the bankruptcy field"; and (2) "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners" in non-bankruptcy cases.  11 U.S.C. § 330(a)(3)(E),(F).  Section 330 codifies the lodestar approach of evaluating fees, which "involves multiplying the reasonable billing rate by the reasonable number of hours expended" and takes into account "the novelty and complexity of the matter, *the quality of the representation*, and the results achieved."  In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (emphasis added).  This review necessarily involves an assessment of the professional competence and skill with which the services were performed.  Indeed, bankruptcy courts have decreased or denied fees based upon an attorney's failure to represent his client in a competent fashion.  See In re Dalton, 95 B.R. 857 (Bankr. M.D. Ga. 1989) (disallowing fees because attorney's services were below minimum standard); In re Chin, 47 B.R.

894 (S.D.N.Y. 1984) (affirming the bankruptcy court's decision directing a debtor's attorney to refund fees to the debtor because of the attorney's incompetence).

In short, evaluation of the professional competence of attorneys representing debtors in possession falls squarely within the province of the bankruptcy court under §§ 329 and 330 of the Bankruptcy Code. Indeed, a bankruptcy judge, who routinely observes and evaluates the professional performance of attorneys in bankruptcy cases, is better situated than a law professor to judge the professional competence of debtor's counsel. As explained by one bankruptcy court:

> [t]he justification to consider opinion evidence from experts exists if the trier of fact is in need of assistance to help to understand an unfamiliar subject, without which assistance the trier of fact would be unable to understand the highly esoteric, technical and scientific concepts which are beyond his or her ken. Of course, it requires no elaborate discussion to point out that what is a reasonable fee to be allowed to an attorney who represents debtors . . .is not a highly esoteric, technical, or scientific subject which a bankruptcy judge would not be able to comprehend without help and assistance of an "expert" to explain the intricacies and complex legal principles which govern allowances to attorneys representing debtors . . . .

In re McClanahan, 137 B.R. 73, 74 (Bankr. M.D. Fla. 1992). See also Langbein v. Kirkland (In re TMT Trailer Ferry, Inc.), 577 F.2d 1296, 1304 (5th Cir. 1978) ("The court . . . is itself an expert on the question (of attorneys' fees) and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid or testimony of witnesses as to value.") (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

Accordingly, this Court concludes that it is capable of deciding, without the assistance of a law professor, whether the Jaspan Firm's conduct in this case fell below the requisite standard of care.

Failure to Move for an Extension of Time to Assume or Reject the Leases

The trustee argues that by failing to move to assume the leases, or to seek an extension of time to do so, the Jaspan Firm was negligent and breached its professional duty to the debtor. The Jaspan Firm argues that any motion to assume the leases would have been futile because the debtor was unable to cure the defaults, as it would have been required to do in order to assume the leases, and was unable to meet the standard to obtain an extension. The Jaspan Firm argues that neither motion would have been granted and, even if the time to assume had been extended, the debtor would not have ultimately been able to assume the leases; and that accordingly, it cannot be held liable for legal malpractice. In response, the trustee argues that the Jaspan Firm should, at a minimum, have sought an extension of time to assume the leases so that the leases would be available for assumption and assignment to a buyer for the dealership, and that in order to obtain an extension of time to assume the leases, the debtor would not necessarily have been required to cure the defaults.

The Jaspan Firm's failure to seek an extension of time to assume the leases within the statutory period is akin to failing to file an action within the applicable statute of limitations. It has been held that, under New York law, an attorney's failure to act within an applicable statute of limitations, thereby failing to protect the client's interests, constitutes negligence as a matter of law. See Gillaizeau v. Marvin M. Mitchelson, P.C., No. 83 Civ. 4367 (JFK), 1985 WL 216, at *4 (S.D.N.Y. Jan. 24, 1985) ("Missing the statute of limitations is a classic example of negligence which any layperson can understand."); Bergin v. Grace, 833 N.Y.S.2d 729, 730 (N.Y. App. Div. 2007) (attorney's failure to commence an action asserting an insurance claim within the insurance policy's statute of limitations "fell below the ordinary and reasonable skill

and knowledge commonly possessed in the legal profession, and constituted negligence as a matter of law") (quotation marks omitted); <u>Deitz v. Kelleher & Flink</u>, 232 A.D.2d 943, (N.Y. App. Div. 1996) (attorney's failure, in two instances, to commence a lien foreclosure action or to seek an extension of the lien was "a breach of [the attorney's] professional duty as a matter of law").

Although the Jaspan Firm had been involved in negotiations with the Landlords, and claims that it proposed a stipulation extending the time to assume the leases, it is undisputed that no stipulation was ever executed.  In the absence of a signed stipulation in hand prior to the expiration of the deadline, the Jaspan Firm owed a duty to the debtor to take the necessary steps in bankruptcy court to seek to protect the leases by requesting an extension of the deadline to assume or reject them.  There is no genuine dispute that the leases were critical to any sale of the debtor.  Therefore, the Jaspan Firm was negligent as a matter of law and breached its duty to the debtor and when it failed to seek an extension of time to assume the leases before December 16, 2002.

The Jaspan Firm argues that the failure to seek an extension of time to assume the leases was not negligent, because a reasonable attorney could have concluded that such a motion would be futile, given the debtor's lack of funds to cure the post-petition arrears under the lease.  This argument ignores the fact that under the Second Circuit's decision in <u>Burger Boys</u>, the debtor's payment of its post-petition rent may not be the only factor considered in determining whether the time to assume or reject a lease of nonresidential real property should be extended under § 365(d)(4) of the Bankruptcy Code.  <u>Burger Boys</u>, 94 F.3d at 761.

The Jaspan Firm argues that <u>Burger Boys</u> has been overruled, or that its continued vitality is at least open to question, by reason of the Supreme Court's decision in <u>Hartford Underwriters v. Union Planters Bank, N.A.</u>, 530 U.S. 1 (2000).  There, the Supreme Court noted, "[w]hen the statute's language is plain, 'the sole function of the courts' . . . 'is to enforce it according to its terms.'"  <u>Hartford Underwriters</u>, 530 U.S. at 6.  Of course, this statement by the Supreme Court does not represent a change in the law after <u>Burger Boys</u>.  Indeed, the quoted language is from <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 241 (1989), quoting <u>Caminetti v. United States</u>, 242 U.S. 470, 485 (1917).

Moreover, the language of § 365(d)(4) does not expressly require the debtor to be current in its post-petition rental obligations under § 365(d)(3) as a prerequisite to obtaining an extension of time to assume a lease.  Courts in the Eastern District of New York have continued to follow <u>Burger Boys</u> since <u>Hartford Underwriters</u> was decided.  <u>See</u> <u>Vermont Partners, Ltd., v. Thaler (In re Poseidon Pool and Spa Recreational, Inc.)</u>, 377 B.R. 52, 61-62 (E.D.N.Y. 2007).  Given the state of the law in this area, and given the unquestionable importance of the leases to any sale of the debtor's business, it would not be reasonable for an attorney to decide not even to attempt to obtain an extension of time to assume the leases.  This is particularly true in light of the fact that the Landlords were insiders of the debtor, in that Micaela Monaghan, 49% owner of the debtor, held a 50% interest in the Landlords.  Obligations owed to insiders often receive close scrutiny in bankruptcy cases and can, in some instances, be deferred or subordinated.  <u>See</u> 11 U.S.C. § 510(c); <u>In re AlphaStar Ins. Group Ltd.</u>, 383 B.R. 231, 276 (Bankr. S.D.N.Y. 2008); <u>Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)</u>, 340 B.R. 1, 44-45 (Bankr. E.D.N.Y. 2006).

Furthermore, the record in the bankruptcy case makes it clear that no decision to forego the possibility of assuming the leases was in fact made. When, after the expiration of the statutory deadline to assume or reject the leases, the Landlords sought to recover possession of the leased premises, the Jaspan Firm did not respond in a manner consistent with a considered decision to give up the leases. Instead, the firm advanced the argument that the Landlords had waived their right to enforce their rights under § 365(d)(4) because they were aware of the "importance" of the leases to the debtor. If the Landlords were aware of the importance of the leases, surely the Jaspan Firm was, and therefore should have made the necessary motion to seek to preserve these assets for the benefit of the estate.

The Jaspan Firm argues that the settlement amount received by the trustee from the Landlords was more than the value of the leases, therefore, the debtor did not sustain any injury as a result of its actions. However, these arguments relate to the damages element of the claim, which is not before the Court at this time. These arguments do not undercut the conclusion that the Jaspan Firm was negligent in failing to seek an extension of time to assume the leases.

For the same reason, the Jaspan Firm's arguments that Ford Credit had a security interest in the leases, and that Ms. Monaghan breached her fiduciary duty to the debtor, are also irrelevant to the trustee's motion. The Jaspan Firm did not seek to protect the debtor's ability to assume the leases by making a timely motion to extend the deadlines to do so. The extent of Ford Credit's security interest and any breach by Ms. Monaghan are relevant, if at all, to the causation and damages element of the claim, and do not affect the conclusion that the Jaspan Firm breached its duty to the debtor by failing to seek an extension of time to assume the leases.

Unpaid Sales Taxes

The trustee argues that the Jaspan Firm negligently drafted the cash collateral stipulation with Ford Credit, and the management agreement with Mr. Leon, because pursuant to those documents, Ford Credit obtained control over the debtor's funds. The trustee argues that, because of these negligently prepared documents, Mr. Leon was effectively barred from paying post-petition taxes, and that the Jaspan Firm advised him not to pay the taxes. As a result, the trustee argues, the debtor incurred penalties and interest. The Jaspan Firm argues that it did not have control over the funds, and cannot be responsible for the unpaid taxes.

The Jaspan Firm has not challenged the trustee's assertion that the cash collateral stipulation and management agreement were drafted so as to preclude the payment of sales taxes. The Jaspan Firm has conceded that the debtor "did not pay pre or post-petition taxes due to the action of [Ford Credit] which controlled the use of cash under the cash collateral order," and that Ford Credit "squelched the flow of money into the dealership." Jaspan Firm's Counter-Statement of Material Undisputed Facts, at 5, ¶¶ 26, 27.

However, taking the above concessions into account, these facts are insufficient to warrant a conclusion that the Jaspan Firm was negligent in drafting the agreements. It is not clear from this record whether the Jaspan Firm's negotiation and preparation of these agreements fell below the necessary degree of care, skill and diligence commonly possessed and exercised by a member of the legal profession. It is possible, for instance, that the agreements were the best result an attorney could have obtained in negotiations with Ford Credit in order to obtain the use of cash collateral. Whereas failure to meet a statutory deadline has been found to be negligence as a matter of law, the appropriate standard of care with respect to the negotiation

and drafting of the agreements is a question of fact precluding summary judgment.  See

Gillaizeau, 1985 WL 216, at *3 (citing Grago v. Robertson, 370 N.Y.S.2d 255, 258 (N.Y. App.

Div. 1975).  Therefore, the trustee's motion for partial summary judgment with respect to these

claims is denied.

Jaspan Firm's Cross-Motion for Summary Judgment

Because the trustee established that the Jaspan Firm's failure to move for an extension to

assume the lease was negligent as a matter of law, the only way the Jaspan Firm may be

awarded summary judgment on its cross motion as to this claim is if it can show that the trustee

would not be able to prove that but for the Jaspan Firm's negligence, the leases would have been

assumed.  See Aversa v. Safran, 757 N.Y.S.2d 573, 574 (N.Y. App. Div. 2003) (to succeed on a

motion for summary judgment, the defendant attorney would have to show that the plaintiff

would not be able to prove at least one of the elements of legal malpractice).  Upon review of

the exhibits relied upon by the Jaspan Firm and drawing all reasonable inferences in favor of the

trustee, this Court cannot conclude that the trustee would, as a matter of fact or law, be unable to

prove the last element of the claim.

It is undisputed that parties expressed interest in purchasing the dealership.  Indeed, the

Jaspan Firm, in opposing the Landlords' motion to recover possession of the premises after the

expiration of the statutory period, pointed out to the Court that the debtor at all relevant times

post-petition intended ultimately to assume and assign the leases, and that during the post-

petition period the debtor, through Ms. Monaghan, "was actively negotiating the sale of the

dealership, which both parties agreed included assignment of Debtor's leases."  Affirmation of

Richard J. McCord, Esq. dated October 16, 2007, Ex. K, ¶ 25.  Clearly, material questions of fact preclude summary judgment in favor of the Jaspan Firm.

With respect to the trustee's claims relating to the allegedly negligent drafting of the cash collateral stipulation and of Mr. Leon's management agreement, and the Jaspan Firm's advice to Mr. Leon regarding the payment of taxes, the Jaspan Firm must either show that the trustee will be unable to prove that the Jaspan Firm was negligent in at least one of these respects, or that the trustee will be unable to establish the requisite causation between negligence and damages. Again, review of the Jaspan Firm's exhibits, drawing all reasonable references in favor of the trustee, leads to the conclusion that questions of fact preclude this Court from determining at this juncture that the trustee will be unable to prove these elements of his claim.

Conclusion

For the foregoing reasons, the trustee's motion for partial summary judgment is granted in part and denied in part, and the Jaspan Firm's cross-motion for summary judgment is denied. A separate order will issue.

Dated:  Brooklyn, New York
        July 2, 2008

                                        */s/ Carla E. Craig*_____
                                        CARLA E. CRAIG
                                        Chief United States Bankruptcy Judge